UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORSS MOTELS INC.<br>    *Plaintiff*,<br><br>v.<br><br>A.V.M. ENTERPRISES, INC., and JOHN DOES 1–5,<br>    *Defendants*. | 3:17-CV-01078 (KAD)<br><br><br><br><br>SEPTEMBER 10, 2019 |

# MEMORANDUM OF DECISION
## RE: MOTION FOR CLASS CERTIFICATION [ECF NO. 64]

Kari A. Dooley, United States District Judge

This case, initiated by plaintiff Gorss Motels, Inc. ("Gorss"), is one of several putative class actions brought against product suppliers to Wyndham Hotel Group ("Wyndham")[1] and its franchisees by Gorss. Gorss contends that A.V.M. Enterprises, Inc. ("A.V.M.") violated the Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227, ("TCPA") when it sent unsolicited facsimile ("fax") advertisements to Wyndham franchisees. Pending before the Court is Gorss' Motion for Class Certification. (ECF No. 64.) For the reasons set forth in this decision, the Motion for Class Certification is DENIED.

**Facts**

Gorss is the former corporate owner of a Super 8-branded motel and Wyndham franchisee. To assist franchisees with purchasing items for their motels, Wyndham has an "Approved Supplier Program" through which franchisees can purchase products that conform to Wyndham's standards at competitive prices. Franchisees receive information about approved suppliers in a variety of ways. For example, at the annual Wyndham Global Conference, approved suppliers have booths

---

[1] For simplicity, the Court will refer to all Wyndham-related entities involved in this matter, including Worldwide Sourcing Solutions, Inc. and Super 8 Worldwide, Inc., individually and collectively as "Wyndham."

to promote their products, and franchisees can request quotes or leads from suppliers, by fax or other means. Wyndham, in coordination with its approved suppliers, also regularly sends out "fax blasts" promoting sales and products.

Since 2009, A.V.M. has been one of only a handful of approved suppliers of certain goods and products for some of Wyndham's franchisees, including franchisees of the Super 8-brand. A.V.M. distributes an array of products to hospitality businesses, including linens, plasticware, cleaning products, and toilet paper, and it has license to sell Wyndham-branded products. Franchisees often need to restock supplies sold by A.V.M. on a weekly basis. Consequently, through its status as an approved supplier, A.V.M. has developed business relationships with many of Wyndham's franchisees, and some franchisees have asked A.V.M. to send them information regarding their products and sales, sometimes via fax. For example, A.V.M. interacted with and received contact information from many franchisees, including Gorss, at the annual Wyndham Global Conference.

Like other approved suppliers, Wyndham worked with A.V.M. to create advertisements for broadcasting to Wyndham franchisees via fax. Wyndham would arrange to send the fax advertisements through a third-party company using a recipient list generated and provided by Wyndham.

Consistent with the Approved Supplier Program, Gorss' franchise agreement, which required it to maintain certain standards at its Super 8-branded motel, provided as follows:

> 4.4 **Purchasing and Other Services.** We may offer optional assistance to you with purchasing items used at or in the Facility. Our affiliates may offer this service on our behalf. We may restrict the vendors authorized to sell proprietary or Mark-bearing items in order to control quality, provide for consistent service or obtain volume discounts. We will maintain and provide to you lists of suppliers approved to furnish Mark-bearing items, or whose products conform to System Standards.

Gorss provided its fax number in another section of the franchise agreement.

As part of the 2014 renewal of Gorss' franchise agreement, Wyndham also issued a Property Improvement Plan ("PIP") report to Gorss, which detailed the aspects of the Gorss facility (*e.g.*, bedding, draperies, artwork, etc.) that needed to be brought into compliance with brand standards. The PIP contained the following provision concerning the purchase of products and services for completion of the PIP:

> By signing this PIP, I acknowledge and agree that select pieces of this PIP may be provided to our approved vendors for purposes of offering you products and services that are required to complete this PIP. Only information necessary for the vendor to offer their products and services will be provided, including contact information, property address, number of rooms, brand converting to, and a list of items related to necessary or required products and services.

The PIP was executed by Gorss on August 26, 2014.

Gorss alleges in its Complaint that A.V.M. sent two fax advertisements to it and other Wyndham franchisees, one on June 15, 2015 and one on May 16, 2016 (collectively, the "Faxes"). The putative class consists of Gorss as well as the other persons or entities who purportedly received the Faxes. Gorss identifies 3,419 unique fax numbers that received the June 15, 2015 fax and 2,762 unique fax numbers that received the May 16, 2016 fax.

Gorss alleges that the sending of the Faxes violated the TCPA because, *inter alia*, the Faxes were "unsolicited" advertisements. *See* 47 U.S.C. § 227(b)(1)(C) (prohibiting transmission of "an unsolicited advertisement" by fax, subject to certain exceptions). Gorss further asserts that the Faxes failed to contain "opt out" language required under by the so-called "Solicited Fax Rule," 47 C.F.R. § 64.1200(a)(4)(iv), which was promulgated, and later repealed, by the Federal Communications Commission ("FCC").

3

**Legal Standard for Class Certification**

A party seeking class certification under the Federal Rule of Civil Procedure must establish that the requirements of Rule 23 have been met by a preponderance of the evidence. *Myers v. Hertz Corp.,* 624 F.3d 537, 547 (2d Cir. 2010). A district court may not certify a class unless it "is satisfied, after a rigorous analysis," that such requirements are met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011) (quoting *Gen. Tel. Co. of Sw v. Falcon,* 457 U.S. 147, 161 (1982)). When assessing whether plaintiffs have met this burden, courts must consider "all of the relevant evidence admitted at the class certification stage." *Betances v. Fischer*, 304 F.R.D. 416, 424 (S.D.N.Y. 2015) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)).

Pursuant to Rule 23(a), a class action may be certified only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23 also incorporates an "implied requirement of ascertainability" of the class. *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015) (internal quotation marks omitted) (quoting *In re Pub. Offerings Secs. Litig.,* 471 F.3d at 30).

Rule 23(b)(3) further provides that a class may be certified only where "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The predominance requirement of Rule 23(b)(3) usually presents a "far more demanding" obstacle to certification than the commonality requirement of Rule 23(a)(2). *In re Photochromic Lens Antitrust Litig.*, No. 8:10–cv–00984–T–27EA, 2014 WL

1338605, at *16 (M.D. Fla. Apr. 3, 2014); *accord Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) ("If anything, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a).") (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24) (1997)). Because the Court deems dispositive the Rule 23(b) predominance analysis, whether the Rule 23(a) requirements are satisfied are neither material to the Court's decision nor further discussed herein.

"The predominance requirement is satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (quoting *UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 131 (2d Cir. 2010)). Here, for example, generalized proof is available on the question of whether the Faxes are "advertisements" under the TCPA. However, even where some common questions may be resolved with generalized proof, predominance is not established if those common questions are "not more substantial than the questions requiring individualized proof." *Glatt v. Fox Searchlight Pictures*, 811 F.3d 528, 539 (2d Cir. 2016).

The issue for this Court is whether the questions identified by Gorss as common to all proposed class members and for which generalized proof is available "predominate" or are "more substantial" than the questions identified by A.V.M. that would require proof individualized to each class member. *See Gorss Motels, Inc. v. Otis Elevator Co.*, No. 3:16-cv-01781 (KAD), 2019 WL 1490102, at *3 (D. Conn. Apr. 4, 2019) (identifying similar issue in Gorss' class litigation); *Gorss Motels, Inc. v. AT&T Mobility LLC*, No. 3:17-cv-00403 (JBA), 2019 WL 625699, at *3 (D. Conn. Feb. 14, 2019) (same).

**Discussion**

The TCPA makes it unlawful for "any person . . . to use any . . . telephone facsimile machine . . . to send, to a telephone facsimile machine, an *unsolicited* advertisement," subject to certain limited exceptions not germane to this decision. 47 U.S.C. § 227(b)(1)(C) (emphasis added). The TCPA defines "unsolicited advertisement" to mean "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." 47 U.S.C. § 227(a)(5) (emphasis added). "Thus, in order for [Gorss] to make out a valid TCPA claim, the fax at issue must have been sent without [the recipient's] prior express permission, i.e. consent."[2] *Gorss Motels, Inc. v. AT&T Mobility LLC*, 299 F. Supp. 3d 389, 391 (D. Conn. 2018) (citing *Cochran v. Massey*, No. 3:12-cv-00765 (DRH) (DGW), 2014 WL 335288, at *2 (S.D. Ill. Jan. 30, 2014) ("The question of permission or consent is . . . dispositive . . . under the TCPA.")).

Although there are multiple factual disputes between the parties, the question of whether the Faxes were unsolicited or consented to is perhaps the most significant one on which the parties disagree, and the dispositive one for purposes of this motion. A.V.M. argues that this litigation will be driven by the question of whether each putative class member consented to receiving the Faxes. Because resolving this question will require a highly individualized, fact-intensive inquiry as to each class member's relationship with Wyndham and A.V.M. (contractual or otherwise), A.V.M. contends that whatever common questions of law or fact might exist do not predominate

---

[2] Gorss draws a distinction between the phrases "prior express invitation or permission" and "prior express consent" as used in the TCPA. Gorss notes that the former phrase is used in the context of fax advertisements while the latter is used when discussing telephone calls. *Compare* 47 U.S.C. § 227(a)(5) *with* 47 U.S.C. § 227(b)(1)(A). This distinction matters, Gorss urges, because "'[t]here is no avenue for inferring or implying permission or invitation based on circumstance or conduct' under the fax rules," as one might do with the issue of consent. (Plf.'s Reply Mem. at 4, ECF No. 85 (quoting *Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12-cv-03233, 2017 WL 2391751, at *4 (N.D. Ill. June 2, 2017)).) For purposes of the certification analysis, this distinction is without import. For ease of reference, however, the Court uses the term "consent" as synonymous with "permission or invitation."

over questions affecting individual class members.[3] Gorss responds that common issues do predominate because whether A.V.M. can rely upon consent given to Wyndham to send the Faxes is a question applicable to all putative class members. Gorss further asserts that there is no evidence that A.V.M. sought or received express consent from any of the proposed class members to send the Faxes. Alternatively, even if the Faxes were not "unsolicited," Gorss contends that they run afoul of the Solicited Fax Rule because they did not contain opt-out notices.

The Court agrees with A.V.M. that the question of whether each class member consented to receive the Faxes at issue must be examined on an individualized basis and that this question is more substantial than any questions which might be answered with generalized proof. As such, it is this individualized inquiry that will predominate in the adjudication of Gorss' claims rendering class certification inappropriate.

First, to determine whether Gorss or other putative class members consented to receive the Faxes, the fact finder will need to examine the nature and scope of each putative class member's contractual relationships with and obligations to Wyndham to determine whether that member consented to receiving fax advertisements from approved suppliers, like A.V.M., before the Faxes were sent. *Accord Gorss Motels, Inc. v. Safemark Sys., LP*, No. 6:16-cv-01638 (GAP), 2018 WL 1635645, at *5 (M.D. Fla. Apr. 5, 2018), *appeal not considered*, 931 F.3d 1094 (11th Cir. 2019). In addition, the fact-finder might need to consider any written or oral communications between the franchisee and Wyndham concerning the dissemination, by Wyndham, of product advertisements for approved suppliers, which, potentially, could involve the testimony at trial of each franchisee.

---

[3] A.V.M. raises other challenges to Gorss' ability to establish the other Rule 23 requirements. Because the lack of predominance is dispositive, the Court need not address A.V.M.'s alternative arguments.

Further, A.V.M. submitted evidence that it had an ongoing relationship with many Wyndham properties and received fax numbers directly from many Wyndham franchisees who wanted not only quotes from A.V.M. but also leads about its products and any sales.[4] The nature of these ongoing relationships and the specific communications between A.V.M. and these franchisees are also probative on the issue of consent and must be examined upon individualized proof.[5]

Alternatively, Gorss contends that even if the Faxes were not "unsolicited," they still violated the Solicited Fax Rule, rendering consent a non-issue. This Court previously rejected this argument and held that the decision by the D.C. Circuit Court of Appeals in *Bais Yaakov of Spring Valley v. F.C.C.*, 852 F.3d 1078, 1082 (D.C. Cir. 2017) invalidating the Solicited Fax Rule is binding on this Court.[6] *Otis Elevator Co.*, 2019 WL 1490102, at *4; *AT&T Mobility LLC*, 2019 WL 625699, at *6. The Court does not herein revisit that determination.

**Conclusion**

For the reasons set forth in this decision, Gorss' Motion for Class Certification [ECF No. 64] is DENIED.

---

[4] Gorss contends that A.V.M. has produced only evidence that some customers requested "to receive specific quotes on specific items for purchase by fax." (Plf.'s Reply Mem. at 2.) Although some of A.V.M.'s customer logs reflect only a request for a quote on a specific item, A.V.M. has presented other documentary and testimonial evidence that establishes that some customers requested more generalized sales information or product leads and, in some instances, provided their fax numbers to A.V.M. for this purpose.

[5] Gorss suggests that A.V.M. cannot establish consent because its corporate representative admitted that A.V.M. did not reach out to the proposed class members to obtain express consent to receive the Faxes in particular. Gorss has not cited any authority, however, for the proposition that A.V.M. needed prior express permission from each franchisee to send the Faxes in particular, as opposed to prior express permission for A.V.M. or approved suppliers to send fax advertisements generally.

[6] Notably, in response to *Bais Yaakov*, the FCC repealed the Solicited Fax Rule. The Eleventh Circuit Court of Appeals recently held that the elimination of the solicited-fax rule precludes retroactive enforcement because that action reflects the FCC's acknowledgement that the rule was invalid *ab initio*. *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1105 (11th Cir. 2019). This argument was not advanced by A.V.M. and this Court takes no position as to the effect of the FCC repeal of the Solicited Fax Rule.

8

**SO ORDERED** at Bridgeport, Connecticut, this 10th day of September 2019.

         _/s/ Kari A. Dooley_
        KARI A. DOOLEY
        UNITED STATES DISTRICT JUDGE