IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GORSS MOTELS INC., a Connecticut corporation, individually and as the representative of a class of similarly-situated persons,<br><br>Plaintiff,<br><br>v.<br><br>A.V.M. ENTERPRISES, INC., a Tennessee corporation, and JOHN DOES 1-5,<br><br>Defendants. | Civil Action No. 3:17-CV-1078-VAB<br><br>CLASS ACTION |

**DEFENDANT'S REPLY MEMORANDUM IN**
**FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

NOW COMES DEFENDANT, A.V.M. Enterprises, Inc. ("AVM"), by and through its undersigned counsel, and for its reply in further support of its motion for summary judgment, respectfully states as follows:

**I.      INTRODUCTION**

The central facts supporting AVM's motion for summary judgment are unequivocal and not in dispute. *First,* Plaintiff provided to Wyndham its fax number as part of its "contact information." (ECF No. 100, pp. 4-5 at ¶¶  13-17.) *Second*, Plaintiff entered into a Franchise Agreement and Property Improvement Plan ("PIP") with Wyndham and, not only agreed that *Wyndham* could send product offers (*id.* p. 6 at ¶¶ 18-20), but also "specifically acknowledged and agreed" that certain approved vendors could have its "contact information" for the purpose of "sending" Plaintiff "offers" regarding their "goods and services." (*Id.,* pp. 6-7 at ¶¶ 21-23.) *Third*, Plaintiff was sent the subject faxes, which offer precisely those "goods and services" that Plaintiff was required to purchase as part of the PIP, from AVM, a Wyndham approved vendor that, also, falls "squarely within the purview of the PIP." (*Id.*, pp. 6-7 at ¶¶ 21-23, p. 13 at ¶ 40.)

1

Not only has Plaintiff has presented no contrary evidence, Plaintiff *admits* each of these statements of fact. (*See id.*, pp. 4-5 at ¶¶ 13-17, pp. 6-7 at ¶¶ 18-27, p. 13 at ¶ 40.) Plaintiff *admits* that it "specifically acknowledged and agreed" that Wyndham's approved vendors—like AVM— could use its "contact information" to "send" it offers regarding their goods and services. (*Id.*, pp. 6-7, at ¶¶ 21-23.) Plaintiff also *admits* that it provided to Wyndham its "contact information," including as part of the 2014 Franchise Agreement that includes the PIP, and specifically *admits* that its "contact information" includes its fax number. (*Compare id.* p. 4 at ¶¶ 13-14, p. 5 at ¶ 17 *with* ECF No. 99, pp. 16-17.) Thus, the undisputed material facts conclusively establish that the subject faxes were sent with Plaintiff's prior express consent—and, this is fatal to its claims.

At their core, Plaintiff's claims are for faxes to which it "specifically" agreed. *See* 47 U.S.C. §227 (b)(1)(C). That Plaintiff expressly consented to the faxes is an absolute and complete defense to its claims. *See Bais Yaakov of Spring Valley v. Fed. Commc'ns Comm'n*, 852 F.3d 1078, 1083 (D.C. Cir. 2017) (no cause of action under the TCPA for solicited fax advertisements even if there is no opt-out language). Summary judgment in favor of AVM is required for this reason alone.[1]

## II.     LEGAL STANDARD

"[T]o show a genuine dispute, the nonmoving party must provide "hard evidence, from which a reasonable inference in [its] favor may be drawn." *Great Minds v. John Wiley & Sons, Inc.*, 204 F. Supp. 3d 507, 511, 2016 WL 4626565 (S.D.N.Y. 2016). If the nonmoving party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment is required. *Reilly*, 2005 WL 1293969 at *1.

That "*some* alleged factual dispute between the parties" exists "will not defeat…summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Vasquez v. Garcia*,

---

[1] Although not addressed in this reply, AVM maintains that summary judgment is required on collateral estoppel grounds and neither waives nor withdraws that previously asserted argument. (ECF No. 93, pp. 16-20.)

No. 3:17-CV-852, 2019 WL 6839818, at *2 (D. Conn. Dec. 16, 2019) (emphasis in original).

"[M]ere speculation or conjecture as to the true nature of the facts," *Tracey v. Dep't of Soc. Servs.*,

No. 3:17-CV-745 (KAD), 2019 WL 2526299, at *1 (D. Conn. June 19, 2019), *quoting Hicks v.*

*Baines*, 593 F.3d 159, 166 (2d Cir. 2010), and "the existence of a mere 'scintilla of evidence in

support of the [nonmoving party's] position,'" will not suffice. *Great Minds.*, 204 F. Supp. 3d at

511, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "Nor will wholly

implausible alleged facts or bald assertions that are unsupported by evidence." *Tracey* 2019 WL

2526299 at *1 (internal citations omitted). Inferences that are "speculative and unsubstantiated"

are, also, insufficient, even if they are "not entirely outside the realm of possibility." *Robinson v.*

*Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015).

## III.   THE MATERIAL FACTS ESTABLISHING CONSENT AND REQUIRE SUMMARY JUDGMENT IN FAVOR OF AVM

The following facts are undisputed.

1. Plaintiff provided its fax number to Wyndham as part of its "**contact information**" (ECF No. 100, pp. 4-5, ¶¶ 13-17); then,

2. Plaintiff into a Franchise Agreement in which Plaintiff agreed that Wyndham, its affiliates, and Approved Suppliers may "offer…assistance…with purchasing items used at or in" its Super 8 branded motel" (*id.*, p. 6 at ¶¶ 18-20); and,

3. At the same time, Plaintiff "***specifically acknowledged and agreed***" that Wyndham's approved vendors "whose goods were relevant to the requirements outlined in the PIP"—***like AVM***—would be provided with Plaintiff's "**contact information**" "*so that those vendors could send Gorss Motels offers regarding the vendors' goods and services*" (*id.*, pp. 6-7, at ¶¶ 21-23); and,

4. Finally, Plaintiff was sent the subject faxes—which offer goods and services that fall "squarely within the purview" of the PIP. (*Id.*, pp. 6-7 at ¶¶ 21-23, p. 13 at ¶ 40.)

These unrebutted facts conclusively establish that Plaintiff consented to the subject faxes—

not once, but twice: *first*, when Plaintiff agreed that *Wyndham* could offer it assistance with

purchasing; and *second* when it agreed that *AVM* could use its contact information to send it "offers"

regarding its goods and services. (*See id.*, pp. 4-5 at ¶¶ 13-17, pp. 6-7 at ¶¶ 21-27, p. 13 at ¶ 40.) Under either, or both, scenarios, the faxes were sent with Plaintiff's prior express consent. Accordingly, AVM is entitled to summary judgment.

### A.      Consent to Fax Advertisements Must Be  Contextually Determined

"As a doctrinal matter," for purposes of any provision of the TCPA, "consent is dependent on the context in which it is given." *See Brodsky v. HumanaDental Ins. Co.*, 269 F. Supp. 3d 841, 846 (N.D. Ill. 2017), *aff'd,* 910 F.3d 285 (7th Cir. 2018) Both the courts, and the Federal Communications ("FCC"), the agency charged with interpreting the Act, have been clear and that the "scope of consent must be determined upon the facts of each situation." *Alpha Tech Pet Inc. v. LaGasse, LLC*, No. 16 C 4321, 2017 WL 5069946,  \*4 (N.D. Ill. Nov. 3, 2017), *aff'd sub nom. Brodsky*, 910 F.3d 285, *quoting In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 F.C.C. Rcd. 7961, 30 FCC Rcd. 7961 ¶ 49 (2015).

Critically, the Second Circuit has provided its interpretation. *See Latner v. Mount Sinai Health Sys., Inc*, 879 F.3d 52, 54 (2d Cir. ." 2018), *as amended* (Jan. 9, 2018). An analysis of the "facts of each situation" is required to determine whether "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given" *Id.* And, a patient who provides his cell phone number and agrees that the hospital could share his information for "treatment" purposes expressly consents to receive subsequent, unrelated "flu shot" reminders. *Id.*

The Second Circuit's interpretation of  consent in *Latner* is directly on point and, therefore, binding on this court. (*Cf.* ECF No. 99, p,. 26; *see Farrell v. Rd. Ready Used Cars, Inc.*, No. 3:17-CV-2030 (JCH), 2018 WL 1936143, \*5 (D. Conn. Apr. 24, 2018) (the Second Circuit's interpretations are binding).) Critically, because "the plain language of the TCPA shows that 'express consent' and 'express invitation or permission' are interchangeable and applicable to both

phone calls and faxes," that the *Latner* court considered a call, and not a fax, does not alter its precedential significance. *See Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 622 (3d Cir. 2020). "Express consent and express invitation and permission are synonymous in the context of the TCPA, and accordingly the standards are not different." *Id.* at 622.[2] Unsurprisingly, the FCC, also, uses the terms "consent" and "permission" interchangeably and without regard for whether the subject matter is a call, text, or facsimile.[3]

*Every* federal appellate court to consider whether a communication was agreed to within the meaning of the TCPA has adopted the same approach as the Second Circuit—regardless of whether that communication was a fax, text or call. *See e.g., Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094 (11th Cir. 2018) (Gorss consented to Wyndham's vendor's faxes a consumer in Gorss' position "[would] understand that by providing a fax number" to Wyndham and agreeing to Section 4.4 of the Franchise Agreement, "he or she is agreeing to receive faxed advertisements" sent as part of Wyndham's approved vendor program); *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (holding that the issue of consent should be considered "*on a case by case basis*" and that providing ones fax number to an industry publication, given the circumstances, amounts to express consent to receive faxes from that publication's subscribers).

---

[2] The Ninth Circuit reached the same conclusion. In *True Health Chiropractic, Inc. v. McKesson Corp.*, it held that, although the faxing provisions of the TCPA do not use the term "express consent," "it clearly provides that consent is a defense with respect to faxes, as does § 227(b)(1)(A) with respect to telephone calls." 896 F.3d 923, 931, (9th Cir. 2018), *cert. denied,* 139 S. Ct. 2743 (2019). The court concluded: "We see no distinction between "express consent" and "prior express invitation or permission" in the context of the burden of proof. *Id.*

[3] *See e.g., In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 33 FCC Rcd. 11179, 11179 (2018) ("we eliminate the Commission's rule requiring opt-out notices on faxes sent with the recipients' prior **permission or consent**"); *In the Matter of Junk Fax Prevention Act of 2005*, 27 F.C.C. Rcd. 4912, 4913 (2012) (discussing **"prior express consent"** for fax advertisements); *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 F.C.C. Rcd. 12391, 78 Rad. Reg. 2d (P & F) ¶ 1258, 10 FCC Rcd. 12391, 12396, 1995 WL 464817 (1995) (the regarding telephone calls "do not include **calls** made with the **prior express permission or invitation**").

Most recently, in *Physicians Healthsource, Inc. v. Cephalon, Inc.*, the Third Circuit held: "[t]he voluntary provision of a number—phone or fax—by a message-recipient to a message-sender, constitutes express consent such that a received message is *solicited* and thus not prohibited by the TCPA, if the message relates to the reason the number was provided." 954 F.3d at 619; *Cf.* ECF No. 99, pp. 23-27. The Third Circuit held that there was no genuine issue of fact that the plaintiff had expressly consented to the faxes because:

> [I]t is undisputed" that PHI voluntarily provided a business card with a fax number on it to Defendants (*i.e.*, knowingly released the number such that the provision was an invitation to be contacted), and it is undisputed that the two faxes related to prior conversations Cephalon's drug representatives had with Dr. Martinez as part of an ongoing business relationship.

*Id.* at 620.

### B.     Plaintiff Specifically Consented to the Subject Faxes

That the subject faxes were covered by the scope of consent Plaintiff provided is, similarly, established by the unrefuted factual record. It is undisputed that Plaintiff (a) voluntarily provided its contact information; and, (b) specifically agreed that Wyndham and its approved vendors could send it "offers" using that contact information. (*See* ECF No. 100, pp. 4-5 at ¶¶ 13-17, pp. 6-7 at ¶¶ 21-27, p. 13 at ¶ 40.)  Thus, Plaintiff's prior express consent to receive the subject faxes *directly* "related to a  specific transaction"—the PIP and the 2014 Franchise Agreement that incorporated the PIP. (*Cf.* ECF No. 99, p. 25.) And, because the subject faxes offered offer goods and services relevant to the PIP and Plaintiff's Wyndham-owned franchise, they *did*, in fact, relate to that "specific transaction" because. (*See* ECF No. 100, p. 6-7 at ¶¶ 18-23, p. 13 at ¶ 40.)

Indeed, the facts, here, are even more compelling than those considered by any of the appellate courts listed above because, after providing its fax number, Plaintiff expressly consented to receive "offers" of *precisely* the type contained in the subject faxes on which it bases the instant lawsuit. (*Compare id. with Physicians Healthsource, Inc.* 954 F.3d at 617 (express consent existed

because plaintiff agreed that the defendant's representatives could "send him things") *and Gorss Motels Inc.*, 931 F. at 1101-02 (Gorss Motels consented to the vendor's faxes solely because it agreed that Wyndham, and its affiliates may "offer…assistance…with purchasing items used at or in" its Super 8 branded motel").) Moreover, in *Gorss Motels, Inc. v. Safemark Sys., LP*, the Eleventh Circuit did not even consider the PIP and held that Plaintiff consented to the vendor's faxed based *only* on the language in the body of the Franchise Agreement. *See* 931 F.3d at 1101-02.

Even under Plaintiff's proposed standard—that prior express permission to receive fax advertisements "requires that the consumer understands that by providing a fax number, he or she is agreeing to receive fax advertisements" (ECF No. 99, p. 27)—the undisputed facts establish Plaintiff's prior express consent. (*See* ECF No. 100, pp. 4-5 at ¶¶ 13-17, pp. 6-7 at ¶¶ 21-27, p. 13 at ¶ 40.) Critically, Plaintiff ***never*** claims that it did not understand that, by providing its fax number and "specifically agree[ing] and acknowledge[ing]" that approved vendors would send it offers, it agreed to the subject faxes. (*See e.g., gen.* ECF. Nos. 99-100.) Indeed, in the face of AVM's copious, documentary evidence, such a claim is impossible.

Rather than pointing to even one fact in the record that directly refutes AVM's evidence, Plaintiff proffers two hypothetical arguments, both of which are easily disposed of upon a close review of the record and applicable law. Initially, because Plaintiff has already admitted that its contact information includes its fax number, (ECF No. 100, p. 4 at ¶ 13 ("Admitted that Plaintiff provided Wyndham its contact information, including its fax number"), its arguments that "contact information" does not include its fax number must be rejected. (*Cf.,* ECF No. 99, pp. 16-17; *see Campoli v. Chubb Grp. of Ins. Companies*, No. 3:04CV1004 (MRK), 2006 WL 57391, *3 (D. Conn. Jan. 9, 2006) (facts admitted in a Local Rule 56.1 statement in opposition to summary judgment are judicial admissions that the admitting party cannot argue away).)

Similarly, the TCPA contains no requirement that "the fax sender must obtain prior express permission directly from the recipient." *Gorss Motels, Inc.,* 931 F.3d at 1102. Moreover, even if the TCPA did limit consent to that provided directly—which it does not—there was no "transfer" because Plaintiff consented to the subject faxes *specifically* and *directly*. (*Cf.* ECF No. 99, pp. 15-16; *see e.g., CE Design Ltd.*, 637 F.3d 721 *and Travel 100 Grp., Inc. v. Mediterranean Shipping Co. (USA) Inc.*, 383 Ill. App. 3d 149, 158, 889 N.E.2d 781, 789, (Ill. 2d Dist. 2008), *distinguished by Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 968 (7th Cir. 2020).) Specifically, in the PIP, Plaintiff forthrightly agrees that "approved vendors" could "send it offers regarding their goods and services" using its "contact information", including its fax number. (ECF No. 100, pp. 6-7, at ¶¶ 21-23.) With this, Plaintiff agrees, directly, to receive promotional faxes from Wyndham's approved vendors. (*Id.*) And, AVM is an approved vendor. (*Id.*, pp. 2-3 at ¶¶ 6-10, p. 18,  at ¶¶ 20-24.)  Consent, thus, did not need to be transferred.[4]

On summary judgment, a genuine dispute of material fact arises ***only*** where Plaintiff *directly* refutes a material fact and supports its denial with "concrete" and admissible record evidence. *Hockett v. Bluestem Brands, Inc.*, No. 16CV0494, 2016 WL 8794468, *4 (W.D. Pa. Aug. 8, 2016) (plaintiff's speculation was not sufficient to defeat summary judgment on the issue of consent in a TCPA claim). Plaintiff, here, has failed to meet this burden.  The material facts are undisputed and establish that the subject faxes were sent with Plaintiff's express consent. Summary judgment in favor of AVM, therefore, is required.

**C.    Plaintiff's Authority Does Not Save Its Claim**

Initially, out of the twenty-three (23) TCPA cases Gorss has filed only two courts have declined to grant summary judgment in favor of the defendants—and both decisions are the result

---

[4] Plaintiff's argument also ignores that Wyndham was intimately involved in the subject faxes and, in fact, included its own logo in the design. (*Id.*, pp. 10-12, at ¶¶ 32-39.) It was Wyndham, and not AVM, who ultimately chose Plaintiff as a recipient of, at least, the vast majority of the faxes. (*Id.* at ¶¶ 36-37. )  By virtue of Wyndham's involvement, Plaintiff's consent given to Wyndham applies to the subject faxes in their entirety.

of distinguishable facts. For example, unlike the instant case, in *Gorss Motels, Inc. v. Sprint Communications,* the defendant's "goods and services" were not relevant to the PIP. (ECF No. 99, p. 11, *ref.* No. 3:17-CV-546 (JAM), 020 WL 818970 (D. Conn. Feb. 19, 2020).) Therefore, Plaintiff's signed agreement "specifically acknowledge[ing] and agree[ing]" that certain approved vendors could send it offers, did not apply to that defendant. (*Id.*) Moreover, most of the faxes were sent *before* the 2014 Franchise Agreement. (*See id.*) Because of these discrete facts, the court found that it could not "point to" any document evidencing Plaintiff's express consent. (*Id.*) The decision in *Gorss Motels, Inc. v. Am. Tex.-Chem Corp.* has even less relevance. (*Cf.,* pp. 14-15, *ref.* 323 F. Supp. 3d 330, 334 (D. Conn. 2018).) That defendant was not a member of Wyndham's approved supplier program and, therefore, did not obtain consent via the 2014 Franchise Agreement or the PIP. (*Id.*).

The facts underlying *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, are, also, distinguishable. (*Cf.,* ECF No. 99, pp. 14-16, *ref.* 950 F.3d 959, 965 (7th Cir. 2020).) In *A-S Medication,* after purchasing part of the business of an unrelated company, the defendants faxed advertisements to numbers in that company's customer database—and, the Seventh Circuit held that those customers did not expressly consent to the purchaser's faxes. *Id.* Central to its decision was the Court's finding that the evidence presented did not demonstrate consent either to the *types* of faxes at issue (advertisements) or that the customers understood that they would receive advertisements advertising the products of the defendants, as opposed to the company from whom the defendants had purchased the database. *Id.* at 965-68.

Here, the undisputed evidence establishes that Plaintiff gave express consent to receive *precisely* the faxes of which it now complains—and, that it consented to receive these faxes from AVM. Specifically, after providing to Wyndham its fax number as part of its "contact information" in connection with the 2014 Franchise Agreement, Plaintiff specifically *"acknowledge[ed] and agree[d]"* that its "contact information" may be provided to Wyndham's "approved suppliers *for*

9

*the purpose of their offering you products and service*s that are required to complete this PIP"— a

Property Improvement Plan that it agreed to as part of the 2014 Franchise Agreement (*See* ECF No.

99, pp. 6-7 at ¶¶ 21-23) (emphasis added.) And, the subject faxes offer products from an approved

supplier (AVM) that are "required to complete the PIP." (*Id.*, pp. 6-7 at ¶¶ 21-23, p. 13 at ¶ 40.)

Plaintiff agreed to allow Wyndham to share its contact information (which, in that same

document, includes its fax number) with its approved suppliers for the *sole purpose* of facilitating

Plaintiff's offers for "products and services" necessary to complete its PIP. *(Id.*, pp. 6-7 at ¶¶ 21-

23.) The resulting faxes were precisely what Plaintiff consented to— faxes offering products from

Wyndham's approved suppliers. (*Id.,* pp. 6-7 at ¶¶ 21-23, p. 13 at ¶ 40.) These facts are undisputed

and establish, unequivocally, that Plaintiff expressly consented to the subject faxes. Summary

judgment in favor of AVM, therefore, is required.

WHEREFORE, Defendant, A.V.M. ENTERPRISES, INC., prays that this Honorable Court

enter an order (1) granting summary judgment in its favor and denying any and all claims against it

arising out of this lawsuit; (2) denying Plaintiff's motion for summary judgment (ECF No. 90); and,

(3) finding that there is no reason for delay of the enforcement or appeal of its order.

Respectfully submitted,
A.V.M. Enterprises, Inc.


By:  /s/ Erin A. Walsh
      One of its attorneys

Eric L. Samore
Erin A. Walsh
SmithAmundsen LLC
150 N. Michigan Avenue #3300
Chicago, IL 60601
 (312) 894-3251
ewalsh@salawus.com


Melicent B. Thompson, ct19868
Litchfield Cavo LLP
82 Hopmeadow Street, Suite 210
Simsbury, CT 06089-9694
Tel:  (860) 413-2800
Fax:  (860) 413-2801
thompson@litchfieldcavo.com

## CERTIFICATION OF SERVICE

I hereby certify that on this 15th day of May 2020, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

[x]    Pursuant to 28 USC Section 1746(2), I certify under penalty of perjury that the foregoing is true and correct. Executed on:  May 15, 2020.


/s/  Erin A. Walsh            .